IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Reflection Window & Wall, LLC, <br><br> Plaintiff and Counter-Defendant. <br><br> v. <br><br> Talon Wall Holdings, LLC, Entekk Group, Ltd., Chicago Heights Glass, Inc., and Kurt Levan, <br><br> Defendants and Counter-Plaintiffs, <br><br><br> Talon Wall Holdings, LLC, Entekk Group, Ltd., Chicago Heights Glass, Inc., and Kurt Levan, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> Joel Phelps, <br><br> Third-Party Defendant. | Case No. 22 CV 03509 <br><br> Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Reflection Window & Wall ("RWW") filed this suit bringing claims against Defendants Talon Wall Holdings, LLC, Entekk Group, Ltd., Chicago Heights Glass, Inc. ("CHG"), and Kurt LeVan ("LeVan") (collectively, "Defendants") for violations of the Lanham Act, federal patent law, the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), the

1

Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), common law unfair competition, commercial disparagement, and intentional interference with existing and potential contractual relationships. (Dkt. 1 at ¶¶ 124–71.)[1] Subsequently, Defendants filed a counterclaim against RWW and a third-party complaint against Joel Phelps ("Phelps"), a former employee of CHG who is now employed by RWW. (Dkt. 19) In their counterclaim, Defendants allege that RWW's July 7, 2022 Press Release (the "Press Release"), which reported RWW's suit against Defendants, included defamatory statements about Defendants and their product, the Talon Wall System. (*Id.* ¶¶ 82–103.) In their third-party complaint, Defendants bring a claim against Phelps for contribution under the Illinois Joint Tortfeasor Contribution Act ("Contribution Act"). (*Id.* ¶¶ 104–113.)

RWW and Phelps have filed a joint motion to dismiss Defendants' Counterclaim and Third-Party Complaint for failure to state a claim. (Dkt. 27.) Phelps additionally argues that the Third-Party Complaint improperly duplicates claims that CHG and Entekk Group have already brought against him in another case in this district, *Chicago Heights Glass Inc., and Entekk Group, Ltd., v. Joel Phelps and Reflection Window Company*, LLC, no. 1:22-cv-00829. (Dkt. 28 at 5.)

RWW and Phelps' motion to dismiss is granted in part and denied in part. Defendants' defamation *per se* claim against RWW and Contribution Act claim against Phelps may proceed.

---

[1] Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Additionally, the Court granted RWW's motion for voluntarily dismissal of Count VIII of its Complaint for Abuse of Process Against Defendants, Chicago Heights Glass, Inc., an Illinois Corporation, and Entekk Group, Ltd. (Dkt. 35.)

Their Illinois Slander and Libel Act ("Slander Act"), defamation *per quod*, and commercial disparagement claims against RWW are dismissed without prejudice.

## Background

The Counterclaim and Third-Party Complaint allege the following facts, which the Court accepts as true for the purpose of considering the instant motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Talon Wall Holdings, Entekk Group, and CHG ("LeVan Companies") are a group of companies owned by LeVan that specialize in glass façade construction and installation. (Dkt. 19 ¶¶ 2–5.) The LeVan Companies have also developed the Talon Wall System, a curtain wall system. (*Id.* ¶ 13.) RWW is a fellow manufacturer and installer of window façade systems that has its own window wall and curtain wall systems. (*Id.* ¶¶ 8, 64.)

Phelps is the former Vice President of Business Development at CHG. (*Id.* ¶ 59.) In his role as Vice President, Phelps found high-rise construction projects for CHG and was involved in marketing the safety of the Talon Wall System. (*Id.*) Phelps later left CHG to join RWW as Director of Curtainwall, after which RWW began producing their own curtain wall system. (*Id.* ¶¶ 63, 64.) After RWW developed its own curtain wall system, Defendants filed suit against RWW for patent infringement in Illinois state court. (*Id.* ¶ 68.) CHG and Entekk Group also sued Phelps personally for breach of contract and breach of fiduciary duty in Illinois state court. (*Id.* ¶ 70.) The suit against Phelps was removed to the Northern District of Illinois in *Chicago Heights Glass Inc., et al v. Phelps*, no. 1:22-cv-00829, where it remains pending. (*Id.* ¶ 71.)[2] In one of Phelp's motions to dismiss in that case, Phelps argued that the Talon Wall created a public safety concern such that the confidentiality requirements of his severance agreement should not apply. (*Id.* ¶ 72.) In

---

[2] The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

3

response, LeVan submitted a sworn declaration to the court that the Talon Wall was safe. (*Id.* ¶ 73.)

Defendants allege that during his employment at CHG, Phelps was responsible for obtaining Engineering Judgments and fire-testing. (*Id.* ¶ 105.) Phelps' position made him privy to confidential information, which he improperly used to gain employment with RWW. (*Id.* ¶ 108.) According to Defendants, Phelps, as an employee of RWW, used CHG's confidential information against CHG to wrongfully claim the Talon Wall was unsafe. (*Id.* ¶¶ 108, 112.) CHG further alleges that Phelps obtained the Engineering Judgments while at CHG for his own gain. (*Id.* ¶ 112.)

Following Defendants' suits against RWW, RWW filed the instant action against Defendants for the claims stated above (*Id.* ¶ 76; Dkt. 1.) In their Complaint, RWW alleges that Defendants obtained misleading Engineering Judgments falsely certifying that the Talon Wall System is fire safe. (Dkt. 19 ¶ 69.) After filing their Complaint against Defendants, RWW published a Press Release on July 7, 2022, that repeated allegations from RWW's Complaint and contained a hyperlink to the Complaint. (*Id.* ¶ 76.)

In particular, the Press Release quotes allegations from RWW's Complaint that call into question whether the Talon Wall System is safe, whether the Engineering Judgments and fire-testing declaring it to be safe were fraudulent, and whether Defendants were aware of these deficiencies in the testing process when marketing the Talon Wall System. (*Id.* ¶ 77.) Defendants specifically allege that RWW's Press Release made numerous false statements including but not limited to:

>  a. That the Talon Wall System is not fire safe;
> b. That the Talon Wall System does not meet ASTM E 2307 standards;
> c. That the [Defendants] are/were aware the Talon Wall System is not fire safe; and,
> d. That the [Defendants] deceptively and recklessly touted the fire safety of the Talon Wall System, despite knowledge to the contrary.

(*Id.* ¶¶ 84, 89, 94.) RWW, at the time it released this Press Release, was aware that LeVan had previously submitted a sworn declaration that the Talon Wall was safe in *Chicago Heights Glass Inc., et al v. Phelps* (no. 1:22-cv-00829). (*Id.* ¶ 73.)

RWW published the Press Release and—the Complaint itself—to the larger public. (*Id.* ¶¶ 79–80.) Defendants allege, on information and belief, that RWW also sent this Press Release directly to a number of partners or players in the glass industry. (*Id* ¶ 80.) Due to the allegedly false statements in RWW's Press Release, Defendants allege they have suffered and will continue to suffer damage to their reputation and business, in an amount not less than $150,000,000. (*Id.* ¶ 92.)

In response to the Defendants' Counterclaim and Third-Party Complaint, RWW and Phelps have filed this instant joint motion to dismiss for failure to state claim. (Dkt. 28.) In light of the pending case against Phelps, no. 1:22-cv-00829, Phelps further argues that the Third-Party Complaint is an attempt to improperly duplicate their claims against Phelps across two different cases. (*Id.* at 15.)

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pled facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

5

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The legal standard for a motion to dismiss a counterclaim is the same as the standard applied to a motion to dismiss a complaint." *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015).

## Discussion

In their motion to dismiss, RWW and Phelps assert that the Defendants' Counterclaim and Third-Party Complaint fail to state claims for relief and, consequently, must be dismissed. (Dkt. 28.) Defendants bring the following claims against RWW: (1) defamation *per se*; (2) defamation *per quod*; (3) commercial disparagement; and (4) on behalf of LeVan, individually, violation of the Slander Act. (Dkt. 19 ¶¶ 82–103.) The Third-Party Complaint seeks to assert a right to contribution against Phelps for any potential tort liability to which Defendants may be subject. (*Id.* ¶¶ 104–113.) The Court will first evaluate RWW and Phelps' arguments in support of dismissal of Defendants' Counterclaim before assessing Defendants' Third-Party Complaint against Phelps.

Ultimately, for the reasons stated below, the Court denies RWW and Phelps' motion to dismiss Count I (Defendants' defamation *per se* claim) and the Third-Party Complaint. The Court grants RWW and Phelps' motion to dismiss Counts II-IV of Defendants' Counterclaims. Defendants' defamation *per quod*, commercial disparagement, and LeVan's Slander Act claims are dismissed without prejudice.

### A. Defendants' Counterclaim

RWW seeks dismissal of Counts I-IV of Defendants' Counterclaim, which consist of Defendants' defamation *per se*, defamation *per quod*, and commercial disparagement claims, and LeVan's individual Slander Act claim. The Court will begin with a discussion of Defendants' defamation *per se* claim.

### 1. Count I – Defendants' Defamation Per Se Claim

To state a defamation claim, the plaintiff must provide sufficient factual allegations showing that "the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Illinois law recognizes two types of defamation claims: (1) defamation *per se* and (2) defamation *per quod*. *Dubinsky v. United Airlines*, 708 N.E.2d 441, 447 (1999). For defamation *per se* claims, damages are presumed, but for defamation *per quod* claims, plaintiffs must plead and prove special damages. *Id*.

A defamation *per se* claim is available if the published statement "is so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary and extrinsic facts are not needed to explain it." *Id*. Illinois common law recognizes five specified categories that are *per se* defamatory, including "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Green*, 917 N.E.2d at 459 (citing *Van Horne v. Muller*, 705 N.E.2d 898 (Ill. 1998)).

The parties do not dispute that the alleged defamatory statements here generally fall into a defamation per se category. Instead, in support of dismissal, RWW contends that Defendants' defamation *per se* claims should fail for five main reasons. (Dkt. 28 at 7–11.) First, Defendants failed to plead the defamatory statements with sufficient precision. (*Id.* at 7–8.) Second, the allegedly defamatory statements are "substantially true." (*Id.* at 8–9.) Third, the Press Release, by restating allegations from RWW's Complaint, offers non-actionable opinions. (*Id.* at 9–10.) Fourth, the Press Release is protected under the fair report or comment privilege. (*Id.* at 10.) Finally, the statements in the Press Release should not be considered defamatory under the innocent construction rule. *(Id.* at 10–11.)

7

### i. Pleading of Defamatory Statements

The Court first addresses RWW's argument that Defendants have not adequately pled the allegedly false statements with sufficient precision and particularity. When a plaintiff brings a defamation *per se* claim in federal court, the plaintiff is subject to the usual notice pleading rules under Federal Rule of Civil Procedure 8. *Gehrls v. Gooch*, No. 09 C 6338, 2010 WL 1849400, at *3 (N.D. Ill. May 7, 2010) (citing *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003)). "A plaintiff is required to plead 'the alleged defamatory words published or spoken by the defendant, but need not allege the defamatory language verbatim.'" *Id.* (citing *Flentye v. Katherrein*, 485 F.Supp.2d 903, 919 (N.D. Ill. 2007)); *see also Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1285 (N.D. Ill. 1996) (noting that a defamation claim "should not fail for vagueness" when a plaintiff "has alleged the basic substance of the statement").

As a threshold matter, the parties dispute whether Defendants' defamation claims apply to the Press Release and RWW's Complaint jointly. The Court declines to consider the hyperlinked Complaint for the purposes of Defendants' defamation claims because the allegations in the Counterclaim focus almost exclusively on statements in the Press Release alone. (*See e.g.,* Dkt. 19 ¶¶ 76, 77, 83, 87.) Permitting Defendants to extend their defamation claim to the Complaint itself would amount to an amendment of the Counterclaim via a responsive pleading. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (referencing the "axiomatic rule that a plaintiff may not amend his complaint in his response brief."). Moreover, even if consideration of the Complaint were consistent with the pleading, the Court agrees with RWW that it is highly doubtful that the mere circulation of a properly filed,

publicly available complaint could be the basis of a defamation claim in light of the absolute litigation privilege.[3]

Setting aside any statements in the Complaint itself, the Court nonetheless finds that Defendants have adequately pled defamatory statements in the Press Release.[4] RWW's main contention is that the allegedly defamatory statements listed by the Defendants in Paragraphs 84 and 89 of their Counterclaim do not actually appear in the Press Release. (Dkt. 28 at 7.) The Counterclaim, however, also generally alleges that the Press Release repeats allegations from RWW's Complaint that the Engineering Judgments were faulty, that the Talon Wall System failed to meet certain applicable standards, and that Defendants were aware, when marketing the product, that it was not actually fire safe. (Dkt. 19 ¶ 77) (*see* Dkt. 19-26 at 1). The Court therefore finds that the Press Release provides the "basic substance" of the statements outlined by Counter-Plaintiffs—at least as to Defendants' allegations that the Press Release defames Counter-Plaintiffs by stating that "the Talon Wall system is not safe" and that the Defendants' "are/were aware the Talon Wall System is not fire safe." (Dkt. 19 ¶¶ 84, 89.)

    ii. *Fair Report Privilege Defense*

Next, RWW argues that aside from the litigation privilege, this Court should apply the fair report privilege—an Illinois qualified privilege for reports of official judicial proceedings—to its allegedly defamatory statements. *See Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825,

---

[3] The absolute litigation privilege serves as a complete defense to defamation claims and protects "anything said or written in the course of a legal proceeding" as long as "it arises 'during the course and as part of, a judicial proceeding … if the matter has some relation to the proceeding.'" *Novoselsky v. Brown*, 822 F.3d 342, 353 (7th Cir. 2016) (citations omitted). The privilege permits attorneys to exercise the freedom necessary "to secure justice for their clients" and protects the "free flow of information between attorneys, clients, and the court system." *Doe v. Williams McCarthy, LLP*, 92 N.E.3d 607, 612(2017) (internal citations omitted). Under this privilege, RWW's Complaint itself cannot be the subject of a defamation claim.

[4] A Court may consider an exhibit attached to a plaintiff's complaint or, here, a counter-plaintiff's counterclaim as incorporated in the pleadings. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998); Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

842 (Ill. 2006). The Illinois Supreme Court has adopted § 611 of the second Restatement of Torts, which provides: "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." *Id.*

Illinois state courts and the Seventh Circuit, however, have clarified that this privilege may not be "self-conferred." *See Kurczaba v. Pollock* 742 N.E.2d 425, 443 (Ill. App. Ct. 2000); *Missner v. Clifford*, 914 N.E.2d 540, 551 (Ill. App. Ct. 2009); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 732 (7th Cir. 2004). In other words, a party, like RWW, may not enjoy the protection of the fair report privilege if the report was issued by the party who made the allegedly defamatory statement. *See Kurczaba*, 742 N.E.2d at 443; *Missner*, 914 N.E.2d at 551; *Republic Tobacco Co.*, 381 F.3d at 732. The reasoning of these courts has rested largely on § 611, comment c, which states that "[a] person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not." *See Missner*, 914 N.E.2d at 551; *Republic Tobacco Co.*, 381 F.3d at 732.

In light of the self-conferral rule, this Court concludes that RWW may not apply the fair report privilege to its Press Release, even though RWW's underlying Complaint is subject to the absolute litigation privilege.

### iii. Opinion Defense

RWW further argues, in support of dismissal, that the Press Release expresses opinions that cannot form the basis of a defamation claim. Although a plaintiff cannot bring a defamation claim for stating an opinion, a purported opinion is only constitutionally protected "if it cannot be

10

reasonably interpreted as stating actual fact." *Solaia Tech., LLC*, 852 N.E.2d at 840. In determining whether a statement is an opinion or fact, courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id.*

The Court disagrees with RWW's contention that the Press Release expresses opinions, rather than assertions of fact. The allegations referenced in RWW's Press Release have "a precise and readily understood meaning." *Id.* at 840. Whether Defendants obtained false Engineering Judgments and marketed the Talon Wall as fire safe when they knew otherwise are statements of fact. These statements are also verifiable as they comprise key factual questions in RWW's suit against Defendants. Finally, the Seventh Circuit has cautioned against the position suggested by RWW, namely that press releases are a "social context giving an opinion on a lawsuit, not stating facts." (Dkt. 28 at 9); *Republic Tobacco Co.,* 381 F.3d at 731 ("In any event, North Atlantic's position seems akin to a rule that filing a lawsuit provides blanket protection for one seeking to publicize false facts. This is a proposition that we, of course, find unsettling.").

     iv. *Substantial Truth Defense*

Additionally, the Court concludes that at this point of litigation, it cannot be established, as a matter of law, as RWW urges, that the defamatory statements in RWW's Press Release were substantially true. "Truth is an absolute defense to defamation and true statements cannot support a claim of defamation." *Seitz-Partridge v. Loyola Univ. of Chicago*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013). A defendant only needs to show that the allegedly defamatory statement is "substantially true" and can do so by demonstrating that the 'gist' or 'sting' of the allegedly defamatory statement is true. *Id.*; *Gist v. Macon Cnty. Sheriff's Dep't*, 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996). Although the question of substantial truth is normally a question for the jury, "the question is one

of law where no reasonable jury could find that substantial truth had not been established." *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 457 (Ill. App. Ct. 2010) (citing *Wynne v. Loyola University of Chicago*, 741 N.E.2d 669, 676 (Ill. App. Ct. 2000)).

RWW argues, in support of dismissal, that the allegations contained within the Press Release are "substantially true" on the grounds that the Press Release accurately summarizes the Complaint. (Dkt. 28 at 8–9.) The Counterclaim alleges that the Press Release is defamatory because it refers to allegations from RWW's Complaint that, in turn, claim that the Talon Wall is not fire safe, the tests certifying it as such were unreliable, and Defendants knowingly misrepresented the product as fire safe. Plainly, the "gist" or "sting" Defendants complains of is in the substance of the statements contained within the Press Release, not with the Press Release's characterization of the Complaint. Considering that "substantial truth" is a fact-intensive inquiry, the Court finds this defense unavailing at this stage of litigation.

> v. Innocent Construction Rule Defense

Finally, RWW urges the Court to apply the innocent construction rule to Defendants' defamation *per se* claim. *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007) (describing Illinois law). Under the innocent construction rule, a defamation *per se* claim will not be actionable if it "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff." *Id.* (internal citations omitted). The Seventh Circuit has observed that this standard makes it more difficult for plaintiffs to establish *per se* defamation, because "'if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one must prevail.'" *Id.* (internal citations omitted). When applying the innocent construction rule, a court must consider the statement "in context, with the words and the implications therefrom given their natural and obvious meaning." *Tuite v. Corbitt*, 866 N.E.2d

12

114, 122 (Ill. 2006). While the Illinois Supreme Court has recognized that the innocent construction rule favors defendants, the court concluded that the tougher standard is warranted "because damages are presumed in defamation *per se* actions." *Id.*

The Court concludes that the application of the innocent construction rule is not appropriate here. Although the Court agrees that the Press Release's statements could be reasonably interpreted as being an innocent summary of the Complaint's allegations, the Seventh Circuit's decision in *Republic Tobacco* appears dispositive here. *See* 381 F.3d at 733. In *Republic Tobacco*, the district court held that an allegedly defamatory letter that repeated allegations from a complaint was not subject to the innocent construction rule. *Id.* There, Republic Tobacco had sued North Atlantic, its competitor, for defamation after North Atlantic sent a letter to all its customers, reporting on a lawsuit North Atlantic had brought against Republic Tobacco. *Id.* at 724. In defense, North Atlantic argued that "the August 13 Letter can reasonably be construed as describing North Atlantic's good-faith allegations about the legality of Republic's conduct." *Id.* at 732–33. The Seventh Circuit, however, rejected that argument because "regardless of North Atlantic's professed intentions, the letter substantively conveys objectively verifiable facts which can only be read one way." *Id.* at 733.

RWW cites the district court's decision in *Maui Jim v. SmartBuy Guru Enterprises* for the proposition that a Press Release reporting on a lawsuit should be subject to the innocent construction rule. (Dkt. 28 at 11; Dkt. 40 at 4–5); *see* 386 F. Supp. 3d 926, 943 (N.D. Ill. 2019). In *Maui Jim*, the court found that it was appropriate to apply the innocent construction rule to a paragraph in a press release released by Maui Jim about its lawsuit against SmartBuy Guru Enterprises, which included a quote from Maui Jim's Vice President. *Id.* at 942. The parties had already agreed that the other paragraphs in Maui Jim's press release that restated the complaint's

13

allegations were not defamatory; SmartBuy singled out the Vice President's quote as being a defamatory attack, different from the rest of the press release. *Id.* Because the Vice President was referring to Maui Jim's lawsuit and allegations against SmartBuy, as opposed to making a defamatory remark directly against SmartBuy, the district court held that the paragraph with his quotation was subject to the innocent construction rule. *Id.* at 943. SmartBuy subsequently sought reconsideration on the grounds that the Seventh Circuit's decision in *Republic Tobacco* required the court to reverse on the innocent construction rule issue. *See Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 459 F. Supp. 3d 1058, 1109, 1112 (N.D. Ill. 2020). The district court, however, distinguished *Republic Tobacco*, finding that the Vice President's quote in the Maui Jim press release clearly referred to Maui Jim's lawsuit whereas the Seventh Circuit found that the letters at issue in *Republic Tobacco* could only be read to confer liability. *Id.* at 1112.

      Looking at the statements at issue in both cases, RWW's press release appears closer to the letter in *Republic Tobacco.* Like the Press Release at issue here, the letter in *Republic Tobacco* reported on North Atlantic's lawsuit against Republic and described the substance of North Atlantic's allegations. 381 F.3d at 724. In *Maui Jim*, in contrast, SmartBuy had taken the Vice President's quotation out of context to suggest that the Vice President was defaming SmartBuy when he was in fact commenting on the lawsuit. 386 F. Supp. 3d at 943. Moreover, the parties had already agreed that the rest of the press release was not defamatory. *Id.* at 942. The Court thus finds that the allegedly defamatory statements in RWW's Press Release are more akin to North Atlantic's letter, and Seventh Circuit precedent dictates that the innocent construction rule is inapplicable here. Accordingly, RWW's motion to dismiss Defendants' defamation *per se* claim is denied.

### 2. Count III – LeVan's Illinois Slander and Libel Act Claim

LeVan, in his individual capacity, brings a claim against RWW for a violation of Section 2 of the Slander Act. The Slander Act states in relevant part that,

> [i]t shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely, or for using, uttering or publishing words of, to or concerning any person, which in their common acceptation, amount to such charge, whether the words be spoken in conversation of, and concerning a judicial proceeding or not.

740 ILCS 145/2. In essence, the Act expands the categories of defamation *per se* stated above to include spurious accusations of false swearing. *See Fried v. Jacobson*, 457 N.E.2d 392, 394 (Ill. 1983).

The Court finds that LeVan has not sufficiently pled a claim under the Slander Act. Although RWW's Press Release implicates LeVan personally and repeats allegations from RWW's Complaint that LeVan knowingly misrepresented the Talon Wall System, it is not facially apparent from the Press Release alone that the Press Release accuses LeVan of testifying falsely. (Dkt. 19-AA at 1.) The Press Release itself makes no reference to LeVan's testimony in Defendants' case against Phelps. Defendants argue that taking the Press Release together with RWW's Complaint demonstrates that RWW made defamatory statements about LeVan. (Dkt. 37 at 10, n. 4) ("RWW Counter-Defendants fail to look at the language in the filing they attached to their press release which brazenly states Mr. LeVan was aware of the alleged fire protection issues."). The Court, however, has already stated that it will not consider the Complaint itself as a basis for Defendants' defamation claims. For the foregoing reasons, RWW's motion to dismiss is granted with respect to LeVan's Slander Act claim.

### 3. Count II – Defendants' Defamation *Per Quod* Claim

Aside from their defamation *per se* claim, Defendants also bring a defamation *per quod* claim against RWW. In contrast to defamation *per se* claims, defamation *per quod* claims are

15

appropriate where the "defamatory character of the statement is not apparent on its face, and resorting to extrinsic circumstances is necessary to demonstrate its injurious meaning." *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 494 F. Supp. 2d 934, 941 (N.D. Ill. 2007). Because a plaintiff bringing a defamation *per quod* claim must plead special damages, the plaintiff must comply with the heightened pleading standard of Federal Rule Civil Rule of Procedure 9(6). *Id.* Unlike the standard notice-pleading standard applied to 12(b)(6) motions, Rule 9(6) requires that "[i]f an item of special damage is claimed, it must be specifically stated." *Id.*; Fed. R. Civ. P. 9(g).

The Court concludes that Defendants have failed to meet the requisite pleading standard for special damages. Defendants have alleged that they have suffered and will continue to suffer damage to their reputation and business, in an amount no less than $150,000,000. (Dkt. 19 ¶ 92.) Defendants have pointed to the publication of the Press Release and have stated that they suffered damage to their reputation and business, which has, in turn, negatively affected their bottom line. (Dkt. 37 at 13.) While the Court understands that it is difficult to ascertain "the full scope of pecuniary loss" prior to discovery, the caselaw is clear that general statements of loss are insufficient. (*Id.*); *see Kyung Hye Yano v. City Colleges of Chicago*, No. 08 CV 4492, 2013 WL 842644, at *7 (N.D. Ill. Mar. 6, 2013), *aff'd sub nom. Kyung Hye Yano v. El-Maazawi*, 651 F. App'x 543 (7th Cir. 2016) ("[G]eneral allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*.") (citing *Kurczaba*, 742 N.E.2d at 433); *Muzikowski*, 322 F.3d at 927 ("[Plaintiff] concedes in his reply brief that he did not itemize his losses or plead specific damages of actual financial injury. This is a required element of a *per quod* claim.") (citing Fed. R. Civ. P. 9(g)); *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1303–04 (Ill. 1996)). The Court finds that Defendants'

16

allegations are too vague to meet the fact-pleading standard of Rule 9(g), as they merely allege general damage to their reputation and business and an unspecified amount of damages of more than $150,000,000. As a result, the Court grants RWW's motion to dismiss with respect to Defendants' defamation *per quod* claim.

### 4. Count IV – Defendants' Commercial Disparagement Claim

Finally, Defendants bring a commercial disparagement claim against RWW. A plaintiff may bring a commercial disparagement claim based on allegations that a defendant has directly disparaged the quality of the plaintiff's goods or services. *Uline, Inc. v. JIT Packaging, Inc.*, 437 F. Supp. 2d 793, 804 (N.D. Ill. 2006). RWW contends that Defendants have not adequately pled special damages, which they argue are required for a commercial disparagement claim. (Dkt. 28 at 13–14.) Defendants did not respond to that argument, and so they have apparently conceded this point. *See Navistar Int'l Transp. Corp. v. Freightliner Corp.*, No. 97 C 3792, 1999 WL 569577, at *4 (N.D. Ill. July 30, 1999) ("Under Illinois law, to recover money damages under a commercial disparagement claim, Navistar must prove that the disparaging speech proximately caused special damages.").[5] The Court will therefore assume for the purposes of the motion to dismiss that special damages are required for a commercial disparagement claim. For the same reasons stated above, the Court finds that Defendants have not adequately pled special damages, and the Court therefore grants RWW's motion to dismiss Defendants' commercial disparagement claim.

### B. Defendants' Third-Party Complaint against Phelps.

The Court now turns to RWW and Phelps' motion to dismiss the Defendants' Third-Party Complaint against Phelps. The Contribution Act states, "where 2 or more persons are subject to

---

[5] The court in *Evanger's Cat & Dog Food Co., Inc. v. Thixton*, did note that it is not entirely clear from Illinois caselaw that commercial disparagement claims require special damages. 412 F. Supp. 3d 889, 904 n. 9 (N.D. Ill. 2019) (citing cases where special damages were required and cases where commercial disparagement claims were allowed to proceed without plaintiffs having pled special damages).

17

liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS §100/2(a). Illinois state courts have clarified that "there need not be actual tort liability in order to state a cause of action for contribution." *Soo Line R. Co. v. Tang Indus., Inc.*, 998 F. Supp. 889, 897 (N.D. Ill. 1998) (quoting *People v. Brockman*, 574 N.E.2d 626 (Ill. 1991)). Rather, "the party seeking contribution must 'potentially [be] capable of being held liable in a court of law or equity. The potential for liability depends merely upon their relative culpability in causing the same injury." *Brockman*, 574 N.E.2d at 634.

As a preliminary matter, the Court rejects RWW and Phelps' argument that Defendants can only seek contribution if they admit they have committed a tort against RWW, (Dkt. 28 at 14), as the Contribution Act does not require "actual tort liability." *Soo Line R. Co.*, 998 F. Supp. at 897. The real inquiry is whether the underlying claim relevant to the Contribution Act claim is for a tort. *See Brockman*, 574 N.E.2d at 634. RWW has brought, among others, claims against Defendants for common-law unfair competition, violations of § 2 of the UDTPA, and violations of § 2 of the Consumer Fraud Act. (Dkt. 1 ¶¶ 142, 150, 158.) Common-law unfair competition is a tort. *See e.g., The Film & Tape Works, Inc. v. Junetwenty Films, Inc.,* 856 N.E.2d 612 (Ill. App. Ct. 2006) (referring to "the common law tort of unfair competition"). So are the Consumer Fraud Act and the UDTPA claims. *See Ho-Chunk Nation v. J.C. Penney Co.*, No. 98 C 3924, 1999 WL 495899, at *8 (N.D. Ill. July 2, 1999). Considering the similarity between the Lanham Act § 43 and Illinois's unfair competition statutes, RWW's Lanham Act claim against Defendants likely also sounds in tort. *See Hyder v. Ham*, 2023 IL App (1st) 221658, 2023 WL 6621338, at *7 (describing similarity between Lanham Act and Illinois unfair competition claims); *Brockman*, 574 N.E.2d at 634 (describing the definition of a tort as a "breach of a noncontractual legal duty

18

owed to the plaintiff, the source of which may be a statute as well as the common law.") (citations omitted). Therefore, Defendants are potentially liable in tort to RWW on those grounds.

The Court further finds that Defendants have adequately pled their Contribution Act claim against Phelps. RWW's tort claims against Defendants are, in essence, that Defendants falsely advertised and misrepresented their product, thereby deceiving consumers and the glass industry writ large. (Dkt. 1 ¶¶ 128, 143, 149, 152, 159–160.)[6] RWW alleges that these purportedly deceptive practices, in part, influenced consumers' purchasing decisions. (*Id.* at ¶¶ 128, 149.) RWW claims, as Defendants' competitor, that it therefore suffered monetary loss and reputational harms because of Defendants' allegedly false advertising and misrepresentations. (*Id.* ¶¶ 128–129, 143, 149, 152, 159–160.) Taking the allegations in the Third-Party Complaint to be true, Phelps was in charge of obtaining the Engineering Judgments for CHG, and he "presented and touted the safety aspects of the product to countless customers, developers, and designers." (Dkt. 19 ¶¶ 59, 105, 107, 59.) As these allegations suggest that Phelps was involved in the marketing of Talon Wall's safety to consumers, it is reasonable to infer that Phelps contributed to causing the same injury to RWW as Defendants. Defendants' other allegations are relevant only to the question of whether Phelps breached his fiduciary duty to Counter-Plaintiffs, which is not a tort claim. *See Hollinger Intern., Inc. v. Hollinger Inc.,* No. 04 C 0698, 2006 WL 1444914, at *2 (N.D. Ill. Jan 25, 2006) ("Though not stated explicitly in the [Contribution] Act, contribution may not be sought for a breach of fiduciary duty because, under Illinois law, the breach is not a tort."). The Court, however, cannot say at this stage, based on the allegations contained within the Complaint, that

---

[6] The Court notes that RWW's allegations against Defendants appear to be allegations of intentional conduct. (*See, e.g.* Dkt. 1 ¶ 125) ("Defendants knowingly and intentionally published and distributed to the public…"). Courts have held that under the Contribution Act, "[i]ntentional tortfeasors cannot *seek* contribution." *Dixon v. Caesars Ent. Corp.*, No. 21 CV 1673, 2022 WL 3445764, at *2 (N.D. Ill. Aug. 17, 2022) (emphasis in the original); *Gerill Corp. v. Jack L. Hargrove Builders, Inc*., 538 N.E.2d 530, 542 (Ill. 1989). This may pose a problem for Defendants down the road.

Phelps would not be subject to liability in tort to RWW for the injuries it suffered because of Defendants' allegedly deceptive practices. Therefore, the Court denies RWW's motion to dismiss Defendants' Third-Party Complaint.

In closing, the Court notes that it agrees with RWW that there seems to be significant overlap with the Defendants' Third-Party Complaint against Phelps and CHG and Entekk's parallel suit against Phelps, no. 1:22-cv-00829, before Judge Gettleman. Northern District of Illinois Local Rule 40.4 outlines the circumstances when two pending cases may be considered "related" and lists the appropriate factors for reassigning related cases. In the event that the parties are unsuccessful in reaching a global settlement, the Court will direct the parties to address the issue of whether Defendants' Contribution Act claim should be reassigned under Local Rule 40.4 considering the potential waste of judicial resources.

## Conclusion

For the foregoing reasons, RWW's motion to dismiss is granted in part and denied in part. Defendants' defamation *per se* claim against RWW and Contribution Act claim against Phelps may proceed, but their Slander Act, defamation *per quod*, and commercial disparagement claims are dismissed without prejudice.

Dated: 3/31/24

*[signature: Nancy L. Maldonado]*

Honorable Nancy L. Maldonado
U.S. District Judge